**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

**CIVIL NO. 08:14-cv-00315-MJG**

**MICHAEL EDWIN BURKHART**
**TERESA STEIN BURKHART,**
**Debtor/Appellants**

**v.**

**NANCY SPENCER GRIGSBY,**
**CHAPTER 13 TRUSTEE,**
**Appellee**

_____

**BRIEF OF APPELLEE**
**NANCY SPENCER GRIGSBY, CHAPTER 13 TRUSTEE**

_____

On Appeal from the United States Bankruptcy Court
For The District of Maryland, Southern Division

(Decision Below by the Honorable Paul Mannes)

In re Burkhart

Bky. Case No. 12-26888-PM
Adv. Proceeding No. 13-00291-PM

_____

Mary Park McLean, Esquire (#25580)
Rebecca A. Herr (#29298)
Counsel to Nancy Spencer Grigsby,
Chapter 13 Trustee
4201 Mitchellville Road, Suite 401
Bowie, MD 20716
(301) 805-4700
Counsel for Appellee

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . .…………………………………………………………………3

STATEMENT OF THE ISSUES PRESENTED……………………………………………….5

STANDARD OF REVIEW…………………………………………………………………….5

STATEMENT OF THE CASE…………………………………………………………………5

STATEMENT OF THE FACTS …………………………………………………………….. .6

ARGUMENT……………………………………………………………………………….10

    I. The Bankruptcy Court's Analysis Was Properly Based on Arguments and Facts

    Presented in Appellants' Lien Avoidance Complaint………….…….…………10

        A.   Development of Existing Case Law Regarding Chapter 13 Lien Avoidances

        Supports the Bankruptcy Court's Ruling………………………………...11

        B.   Although Confusion Exists as to the Precise Mechanics, Sections 506(a) and (d)

        Remain Vital to Chapter 13 Lien Avoidances………………………………...15

    II. The Statute and Case Law Evidence the Need for Filed Proofs of Claim …………...20

        A.   Time for Filing Proofs of Claim is Prior to Lien Avoidances…………………..23

CONCLUSION……………..…………………………………………………………………23

## TABLE OF AUTHORITIES

**FEDERAL CASES**

*Bartee v. Tara Colony Homeowners Ass'n (In re Bartee),* 212 F.3d 277 (5th Cir.2000)………...14

*Branigan v. Davis (In re Davis)*, 716 F.3d 331 (4th Cir. (Md.) 2013)…………………...14-19, 22

*Briscoe v. United Stated of America (In re Brisco)*, 486 B.R. 422 (Bankr. N.D. Ill 2013)……...20

*Butler v. Shaw*, 72 F.3d 437 (4th Cir. 1996)……………………………………………………….5

*Butner v. United States*, 440 U.S. 48 (1979)……………………………………………………..14

*Cen-Pen Corp. v. Hanson*, 58 F.3d 89 (4th Cir.1995)…………………………………………...22

*Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773 (1992)……………………...11, 12, 16, 18, 20-23

*Enewally v. Washington Mutual Bank (In re Enewally),* 368 F.3d 1165 (9th Cir.2004)………...14

*First Mariner Bank v. Johnson*,  411 BR 221 (D. Md. 2009)…………….…...……………………15

*Brinson v. United States of America (In re Brinson)*, 485 B.R. 890 (Bank. N.D. Ill 2013)…14, 18

*In re Brown*, 339 B.R. 818 (Bankr. S.D. Ga. 2006)……………………………………………..14

*In re Burkhart*, 505 B.R. 444 (Bankr. D. Md. 2014)……...………………………9, 10, 20, 21, 23

*In re Callahan*, 251 B.R. 170 (Bankr. S.D.Fla. 2000)…………………………………………...21

*In re Hamlett*, 322 F.3d 342 (4th Cir. 2003)……………………………………………………..22

*In re Hanson*, 397 F.3d 482 (7th Cir. 2005)……………………………………………………...17

*In re Hernandez*, 175 B.R. 962 (N.D. Ill 1994)………………………………………………….16

*In re Kressler*, 40 Fed. Appx. 712 (3rd Cir. 2002) (unpublished opinion)………………………21

*In re Lam*, 211 B.R. 369 (9th Cir BAP 1997)…………………………………………………...14

*In re Pajian*, 2014 WL 1476945 (Bankr. N.D.Ill. 2014)………………………………………...21

*In re Scantling*, 465 B.R. 671 (Bankr. M.D.Fla. 2012)………………………………………….17

*In re Stewart*, 408 B.R. 215 (Bankr.N.D.Ind.2009)……………………………………………...17

*In re Woodhouse*, 172 B.R. 1 (Bankr. D.R.I. 1994)……………………………………………...14

*Johnson v. Asset Management Group, LLC*., 226 BR 364 (Md. 1998) ………..………9, 11, 13-15

*Lane v. W. Interstate Bancorp (In re Lane)*, 280 F3d 663 (6th Cir.2002)……………………14, 17

*Long v. Bullard*, 117 U.S. 617, 6 S.Ct. 917 (1886)…………………………………………...22

*Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 55 S.Ct.854 (1935)………………22

*McDonald v. Master Fin. (In re McDonald),* 205 F.3d 606 (3rd Cir.2000)……………………...14

*Nobelman v. American Savings Bank*, 508 U.S. 324, 113 S. Ct. 2106 (1993)………………11-13

*Pond v. Farm Specialist Realty (In re Pond)*, 252 F.3d 122 (2nd Cir.2001)………………………4

*SunTrust v. Millard (In re Millard)*, 414 BR 73 (D. Md. 2009)………………..……………11, 15

*Tanner v. First-Plus Fin (In re Tanner)*, 217 F.3d 1357 (11th Cir.2000)………………………..14

*United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235 (1989)………………………………13

*Unites States Nat'l Bank v. Chase Nat'l Bank*, 333 U.S. 28, 67 S.Ct. 1041 (1947)……………..22

*Wade v. Bradford*, 39 F.3d 1126 (10th Cir. 1994)…………………………………………………17

*White v. FIA Card Services, N.A.*, 494 B.R. 227 (W.D. Va. 2012)…………………………..21-23

*Woolsey v. CitiBank, N.A. (In re Woolsey)*, 696 F.3d 1266 (10th Cir.2012)…………….14, 17, 20

*Zimmer v. PSB Lending Corp. (In re Zimmer)*, 313 F.3d 1220 (9th Cir.2002)………………14, 17

## FEDERAL STATUTES

11 U.S.C. § 105(a)………………………………………………………………………......9

11 U.S.C. § 349(b)(1)(C)…………………………………………………………………...19

11 U.S.C. § 501…………………………………………………………………8, 9, 20, 23

11 U.S.C. § 502……………………………………………………………......8-11, 20, 23

11 U.S.C. § 506(a) and (d)……………………………………………...throughout

11 U.S.C. §1322(b)(2)………………………………………………………..throughout

11 U.S.C. § 1325…………………………………………………………………12, 13, 19

11 U.S.C. § 1327(c)……………………………………………………………………...16

## FEDERAL RULES OF BANKRUPTCY PROCEDURE

R. 3002(c)(1)…………………………………………………………………………8, 10, 23

R. 3002(c)(3)……………………………………………………………………8, 9, 20, 23

R. 3004…………………………………………………………………………..9-10, 23

R. 3012………………………………………………………………………………...20

## TREATISES

Keith M. Lundin & Williams H. Brown, CHAPTER 13 BANKRUPTCY, 4TH EDITION § 128.1, at ¶ 40,

42, Sec. Rev. Nov. 4, 2011, www.Ch13online.com...................................................15-16

## STATEMENT OF THE ISSUES PRESENTED

1.  Are Sections <u>506(a)</u> and <u>(d)</u> of Title 11 of the United States Code[1] necessary statutory predicates to avoiding wholly unsecured liens against Chapter 13 debtors' real property or can other Bankruptcy Code provisions and case law provide sufficient alternative legal basis to effectuate such value-based avoidance actions?

2.  If Sections <u>506(a)</u> and <u>(d)</u> are necessary to void wholly unsecured liens against residential property, does the use of the term "allowed secured claim" referenced in these sections mean that an "allowed claim"-- that is, a filed-proof of claim --  is a necessary condition precedent to declaring a lien void in Chapter 13 cases?

## STANDARD OF REVIEW

Conclusions of law made by the Bankruptcy Court are subject to *de novo* review.  *Butler v. Shaw*, 72 F.3d 437, 441 (4th Cir. 1996).  In this case, there are no facts in dispute.  The issues presented in this appeal revolve solely around the interpretation of the Bankruptcy Code and a dispute over conclusions of law made by the Bankruptcy Court.  Therefore, this appeal invokes a *de novo* review on all matters.

## STATEMENT OF THE CASE

The Trustee generally concurs with the procedural facts presented by Appellants and incorporates them herein.  The Trustee adds only the following clarifying points:

Appellants contend that the Bankruptcy Court erred in its interpretation and application of Sections <u>506(a)</u> and <u>(d)</u> and, in so doing, ignored over fifteen years of lien avoidance case law.

---

[1] Unless expressly stated otherwise, all references to the "Code" or "Section" are to Title 11 of the United States Code, otherwise known as the Bankruptcy Code.   Similarly, all Rule references are to the Federal Rules of Bankruptcy Procedure.

The Trustee disagrees that the Bankruptcy Court 'ignored' existing lien avoidance case law. Instead, the Trustee believes confusion exists regarding the precise mechanics of lien avoidances in Chapter 13.  Accordingly, and as a consequence of the lower court's careful analysis of the precise wording and meaning of the applicable statutory basis for Appellants' lien avoidance Complaint, the Bankruptcy Court determined that Appellants lacked the necessary conditions precedent to effectuate the desired lien avoidances.

Specifically, the Bankruptcy Court determined that § 506(a) and § 506(d) remain vital to Chapter 13 lien avoidance actions.  Moreover, Bankruptcy Courts have begun paying more attention to the specific language contained within these sections, resulting in an emerging body of law followed by Judge Mannes in his ruling below. These emerging cases hold that, absent filed proofs of claim, debtors may not successfully value or avoid a lien-holder's security interest pursuant to §§ 506 (a) and (d).  Given that all prior rulings in this District and Circuit – or at least the key cases cited in Appellants' Brief – involved actual, filed, proofs of claim, it appears that this is a question of first impression within the Fourth Circuit. [2]

## STATEMENT OF THE FACTS

The Trustee generally concurs with the procedural facts presented by Appellants and incorporates them herein.  The Trustee adds the following:

This case involves a complaint to avoid wholly unsecured liens attached to the Appellants'[3] residential real property (the "Complaint") where no claims were filed by two of the

---

[2] The Trustee has reviewed all of the rulings and related pleadings involving lien avoidances included in both Appellants' and Appellee's briefs and has determined that they involved actual filed proofs of claim.

[3] Appellants—movants in the underlying Chapter 13 adversary proceeding –are referred to interchangeably as "Appellants" or "Debtors."

three relevant creditors.[4]  The Court focused its opinion on this undisputed fact.

Except for the fourth amended plan, all of Appellants' six proposed Chapter 13 plans treated the liens similarly— each indicated that the treatment of creditors' liens would be "determined by court order on [a] lien avoidance complaint."  Each plan also identified each lien by account number and by priority status as Chase 1st lien, PNC Mortgage 2nd lien, and Community Bank of Tri-County 3rd and 4th liens.[5]  Although the Chapter 13 case and first proposed Chapter 13 plan were filed in September, 2012,[6] the Complaint was not filed until May 16, 2013, well after the January 23, 2013 claims bar date.

The Complaint's recitation of the priority of the liens that attached to Appellants' residence is not entirely clear.  For clarification purposes, the following secured claims were alleged to be secured by the Debtors' principal residence:

(a) a first priority lien in favor of Chase in the amount of $609,500 according to the Debtors' Schedule D, filed in the Bankruptcy Case at Dkt 10.  U.S. Bank National Association, as trustee for Chase, filed a claim for $613,042.88.  This claim is docketed as Claim No. 21-1 on the Court's Claims Register.

(b) a junior lien in favor of PNC Mortgage ("PNC") of approximately $105,995.75 according to the Debtors' Schedule D, Dkt 10, and PNC Bank's claim.  This claim is docketed as Claim No. 10-1 on the Court's Claims Register.

---

[4] Specifically titled, "Complaint to Declare Validity, Scope and Extent of Liens of Community Bank of Tri-County and PNC Bank Pursuant to 11 U.S.C. Sections 105(a), (d), 1322(b), 28 U.S.C. Sections 2201, 2202 and Fed. R. Bankr. P. 3012," filed on May 16, 2013, after the expiration of both the general and governmental bar dates of January 23, 2013 and March 13, 2013, respectively.

[5] The Fourth Amended plan, filed after the claims bar date, included the additional assertion that "Tri-County holds neither a secured nor an unsecured claim due to its failure to timely file a claim."  The additional assertion regarding Tri-County's liens is absent in all subsequent plans.  See, *Fourth Amended Chapter 13 Plan*, filed May 18, 2013 at Dkt. 57.

[6] The case was filed on September 14, 2012; the First Chapter 13 Plan was filed on September 27, 2012.

(c)a junior lien in favor of Community Bank of Tri-County ("Tri-County") of $78,289.71

according to the Debtors' Schedule D, Dkt 10.

(d)a junior lien in favor of Tri-County of $49,411.80, according to the Debtors' Schedule

D, Dkt. 10.

As part of their Complaint, the Appellants attached a copy of a Residential Broker Price

Opinion, which listed the Market Value of the Property in "as is" condition at $435,000.00.

Debtors alleged that all but Chase's first priority lien were wholly unsecured and so sought

avoidance of each of the other creditors' liens pursuant to § 506(a) and (d).

Tri-County failed to file any timely proof of claim in the Debtors' Bankruptcy Case.

Therefore, the Complaint also asserted that Tri-County forfeited any distributions under the plan,

the bar date having terminated four months earlier.  See, *Complaint* at 4, para. 8 and 9 and Count

II at 5, para. 17-20, seeking a declaratory ruling both avoiding Tri-County's *in rem* claims and

declaring that it holds no unsecured claim due to the lender's failure to timely file a proof of

claim.  Appellants made no attempt to file protective proofs of claim for Tri-County, despite

provisions allowing for the filing of such claims within thirty days after the claims bar date.[7]

Thus, at the time the Complaint was filed, only PNC and Chase had 'allowed claims,' as the term

is defined in §502.

This position was later reversed in Appellants' Amended Motion for Default Judgment

---

[7] Section 501 of the Bankruptcy Code and Federal Bankruptcy Procedure 3004 allow for the filing of proofs of claim by one of the entities empowered to do so, "if a creditor does not timely file a proof of claim  . . . within 30 days after the expiration of the time for filing claims prescribed by Rule 3002(c) or 3003(c) whichever is applicable."

Rule 3002(c)(1) and (3) specifically states the following regarding the timing of filing of proofs of claim or Interest by creditors:
In a ….chapter 13 individual's debt adjustment case, (1) a proof of claim is timely filed if it is filed not later than 90 days after the first date set for the meeting of creditors called under Section 341(a) of the Code, [or] except as follows: . . .(3) An unsecured claim which arises in favor of an entity or becomes allowable as a result of a judgment may be filed within 30 days after the judgment becomes final if the judgment is for the recovery of money or property  from that entity or denies or avoids the entity's interest in property.

(treated as a Motion for Reconsideration by the Bankruptcy Court) where Appellants stated that once Tri-County's wholly unsecured liens are avoided, Tri-County would be able to "*participate in [the] case as an unsecured creditor to the extent permitted pursuant to Fed. R. Bank. P. 3002(c)(3).*" See, *Appellants' Amended Motion for Default Judgment*, Bky. Dkt. 16 at para. 5 and *Appellant's Brief* at 17-20 (emphasis in original).

Although the Complaint's caption references Sections 105(a), 506(a) and (d) and 1322(b) as the basis for relief, the body of the Complaint, as well as every count in the Complaint, recites only § 506(a)'s claims classification provision and § 506(d)'s voiding provision as the basis for relief. See, *Complaint* para's 10, 12, and Count I at para16, and Count III at para 23 for references § 506(a) and (d). By contrast, § 1322(b)(2) is referenced only once, at the conclusion of the recitation of facts, together with a reference to this Court's ruling in *Johnson v. Asset Management Group, LLC*, as providing the legal basis for allowing lien strips of wholly unsecured liens on debtors' residence. See, *Complaint* at 4, para. 13 citing, *Johnson v. Asset Management Group, LLC*, 226 B.R. 364 (D. Md. 1998).

Appellants' Complaint references the principals set forth in *Johnson v. Asset Mgmt.* as the legal basis for modification of PNC and Tri-County's lien rights. However, upon reviewing the express language contained within § 506(a) and (d), read in light of other recent Bankruptcy Court opinions, Judge Mannes determined that, although Tri-County's liens might be wholly unsecured, Tri-County's claims could not be classified as wholly unsecured nor its liens deemed void absent an 'allowed claim.' Specifically, Judge Mannes focused on § 506(a) and (d)'s use of the term 'allowed claim' to determine that the necessary condition precedent to avoiding Tri-County's liens had not been met—namely, the filing of a claim.[8] See, Judge Mannes' Amended

---

[8] This necessary condition precedent could, the Judge later noted, easily have been accomplished by any one of the entities empowered to do so -- the creditor, the Debtor, a co-obligor or the Trustee. See, Section 501, (defining who

Memorandum of Decision, Adv. Dkt. 28 at 4 (hereinafter, *In re Burkhart*, 505 B.R. 444 (Bankr. D. Md. 2014)).

Judge Mannes's ruling can be summarized as follows: if no claim has been filed, (a) no claims evaluation under § 506(a) is possible and therefore (b) no lien avoidance under § 506(d) can occur.  The filing of a claim either by debtors, or another entity authorized to do so, would automatically render the debt or claim an 'allowed claim' pursuant to § 502.  Absent such allowed claim, the desired lien avoidance could not be effectuated against Tri-County.  *Id.*

## ARGUMENT:

### I. The Bankruptcy Court's Analysis Was Properly Based on the Arguments and Facts Presented in Appellants' Lien Avoidance Complaint

Despite the fact that their lien-avoidance Complaint recites the same code sections upon which the Bankruptcy Court based its ruling – namely § 506 (a)'s claim classification and valuation provision and § 506 (d)'s lien voiding provision – Appellants now take the position that their Complaint was based solely on the authority provided by §§ 1322(b)(2) and 506(a) without reference to § 506(d).  *Appellants' Brief* at 12, 15.  Specifically, Appellants take issue with the Bankruptcy Court's reliance on the terms 'allowed claim' contained within § 506(a) and (d).  Frustrated in their efforts to restrict the focus of the Bankruptcy Court's analysis to § 1322(b)(2)'s lien modification process, they now appear to be arguing that § 506(d) is mere surplusage -- arguing that after the Supreme Court's rulings *Nobelman v. American Savings*

---

may file claims) and Section 502 (definition of allowed claims), as amplified by Rule 3002 (creditor claims) and 3004 (specifying the timing for filing of claims by non-creditors).

Rule 3002 provides guidance as to the timing for filing claims.  Protective proofs of claim by other entities must either be filed within 30-days after the expiration of the creditor's claims bar date (defined within the Section 3002(c)(1) as 90 days after the first date set for the meeting of creditors) or after 30 days after [a] judgment becomes final if the judgment denies or avoids the entity's interest in property.

*Bank, et al,*[9] and this Court's prior rulings in *Johnson v. Asset Mgmt.* and *Millard,*[10] that only §§ 506(a) and 1322(b)(2) are relevant to Chapter 13 lien avoidances. *Appellants' Brief* at 15-20.

The Trustee disagrees. Based on her review of the history of Chapter 13 lien avoidances, the Trustee has concluded that the Bankruptcy Court was correct in its reliance on §§ 506(a) and (d), which, together with other statutory provisions such as § 1322(b)(2), form the basis for value-based lien avoidances in Chapter 13. Additionally, this interpretation has the added merit of allowing the Bankruptcy Code to work as a whole, giving each Section equal weight.

A. The Development of Existing Case Law Regarding Chapter 13 Lien Avoidances Supports the Bankruptcy Court's Ruling

The case law regarding Chapter 13 lien avoidances is extensive and necessarily starts with three seminal cases: the Supreme Court decisions of *Dewsnup v. Timm*[11] and *Nobelman* as well as this Court's prior ruling *in Johnson v. Asset Mgmt.* In *Dewsnup,* the Supreme Court discussed the interplay between § 506(a) and 506(d) based on a Chapter 7 debtor's desire to redeem abandoned property by "stripping down" a creditor's lien to the value of the collateral determined pursuant to § 506(a). The Court, citing long-standing pre-Bankruptcy Code legal principals and case law, held that under § 506(d), creditor's lien, which was at least partially secured, constituted a fully "allowed secured claim."[12] The claim (and underlying lien) were, therefore, beyond the reach of § 506(d)'s lien voiding powers, despite the valid § 506(a) valuation and classification of the creditor's claim as partially unsecured. *Dewsnup,* 502 U.S. at 417-418.

---

[9] *Nobelman v. American Savings Bank, et al*, 508 U.S. 324, 113 S.Ct. 2106 (1993)

[10] *SunTrust v. Millard (In re Millard),* 414 B.R. 73 (D. Md.2009)

[11] *Dewsnup v. Timm,* 502 U.S. 410, 112 S.Ct. 773 (1992)

[12] An "allowed claim" pursuant to § 502 due to respondent/creditors timely-filed proof of claim.

The lasting effect of *Dewnsup* is that claims supported by liens that are at least partially secured by collateral (or liens for which no bankruptcy claim has been filed), are not avoidable – even in the face of a judicially determined § 506(a) valuation—at least not in Chapter 7 liquidation cases.

As the Court *in Dewsnup* further noted,

We think, however, that the creditor's lien stays with the real property until foreclosure.  That is what was bargained for by the mortgagor and mortgagee.  The voidness language [within § 506(d)] sensibly applies only to the security aspect of the lien and then only to the real deficiency in the security.  Any increase over the judicially determined valuation during bankruptcy rightly accrues to the benefit of the creditor, not to the benefit of the debtor.

Such surely would be the result had the lienholder stayed aloof from the bankruptcy proceeding (subject, of course, to the power of other persons or entities to pull him into the proceeding pursuant to Section 501), and we see no reason why his acquiescence to that proceeding should cause him to experience a forfeiture of the kind the debtor proposes. It is true that his participation in the bankruptcy results in his having the benefit of an allowed unsecured claim as well as his allowed secured claim, but that does not strike us as the proper recompense for what petitioner proposes by way of the elimination of the remainder of the lien.

*Dewsnup*, 502 U.S. 410, 418.

By contrast, Chapter 13 debtors have additional rights, generally related to Chapter 13 reorganization plans, specifically §§ 1322 and 1325.  Of these, § 1322(b)(2)'s provision for modification of the rights of certain secured claim-holders led to the Supreme Court's decision in *Nobelman*, decided the year following *Dewsnup*.  *Nobelman* essentially supplemented the Court's analysis in *Dewsnup* and clarified that, in the Chapter 13 context, the § 506(a) claims valuation-process cannot be used to modify the rights of creditors with liens secured only by the debtor's residence, despite a valid judicial determination that the underlying liens are only partially secured.  *Nobelman,* 508 U.S. at 327-331.  In such instances, the Court concluded that, because the terms of the unsecured component of the underlying liens cannot be modified

without also modifying the terms of the secured components, § 1322(b)(2)'s anti-modification

provision operates to protect the entire claim. *Id* at 328-331, citing *United States v. Ron Pair*

*Enterprises, Inc*., 489 U.S. 235, 239 n. 3 (1989).

Specifically, the Court in *Nobelman* stated that, despite the fact that "[t]he portion of the

bank's claim that exceeds [the value of the property] is an 'unsecured claim componen[t]' under

§ 506(a)," the entire secured claim is nonetheless allowed because, "§ 506(a) itself uses the

phrase 'claim ... secured by a lien' to encompass both portions of an undersecured claim." *Id* at

331.  In other words, valuation is not modification.  Despite § 1322(b)(2)'s plan modification

provisions, *Nobelman* rejected the notion that a § 506(a) valuation "operates automatically to

adjust downward the amount of a lender's undersecured home mortgage." *Id* at 328.  Thus, a

§ 506(a) valuation of an 'allowed claim' secured by a lien does not on its own result in a final

determination, or modification, of the claim nor is it sufficient to modify lienholder's rights.

Although the mechanics are not always clear, the power to modify rights -- to cram down

claims and modify liens -- comes from the combined operative effect of Sections 506(a) and (d),

and Sections 1322(b)(2) and 1325(a).  More precisely, a series of decisions emanating initially

from circuits beyond our own and then locally through this Court's appellate rulings explain the

legal genesis of Chapter 13 value-based lien-avoidances.   In this District, the process

commenced with this Court's ruling in *Johnson v. Asset Management Group, LLC*., 226 B.R.

364 (Md. 1998).

Noting a split based on different interpretations of the Supreme Court's ruling in

*Nobelman*,  *Johnson v. Asset Mgmt* focused on the interplay between §§ 506(a) and 1322(b)(2) in

the context of a completely unsecured junior homestead liens.  This Court distinguished

*Nobelman* on the basis that the Johnsons' loan was wholly unsecured as compared to the

homestead loan in *Nobelman*, which was only partially unsecured.  *Id* at 366.  This Court

concluded  that because § 1322(b)(2)'s anti-modification provision was intended to protect only

those rights that would be protected under state law and none greater, "a junior lienholder has no

right to be treated more favorably in bankruptcy than in foreclosure.*"  Id* at 369.  Thus evolved

the concept that § 1322(b)(2) does not prohibit the stripping of completely unsecured junior

homestead liens, particularly where the wholly unsecured lien would be extinguished in

foreclosure and would not result in any financial return.  *Id* at 369.  In short, § 1322(b)(2)'s

antimodification provisions do not protect the rights of such lienholders.  *See. e.g., In re*

*Brinson*, 485 B.R. 890, 899 (Bankr. N.D. Ill 2013), *citing, In re Lam*, 211 B.R. 369 (9th Cir. BAP

1997); *In re Woodhouse*, 172 BR 1, 2 (Bankr. D.R.I 1994) ("finding the rights of an unsecured

lienholder to be illusory, hyper-technical, and possibly relevant only in law review articles"). [13]

This reliance on state-based property rights is well-supported by long-standing bankruptcy case

law.  See, for example, *In re Brown,* 339 B.R. 818, 821 (Bankr. S.D. Ga. 2006) citing *Butner v.*

*United States,* 440 U.S. 48, 54 (U.S. 1979) (discussing the general rule in bankruptcy law that

property rights, including lien rights, are defined by reference to state law.)

     Similar rulings regarding Chapter 13 value-based lien avoidances ensued, culminating in

the 2013 written opinion by the Fourth Circuit in *Branigan v. Davis (In re Davis)*, which

effectively affirmed the reasoning of *Johnson v. Asset Mgmt*, by stating, "We too have affirmed,

---

[13] Also see, *Woolsey v. Citibank, N.A., ( In re Woolsey )*, 696 F.3d 1266 (10th Cir.2012) ("Not only does *Dewsnup's* reasoning rest on peculiarities of the Chapter 7 context bearing little relevance to Chapter 13 practice, the case expressly instructs us to read its holding narrowly."); *Enewally v. Wash. Mut. Bank (In re Enewally),* 368 F.3d 1165, 1170 (9th Cir.2004) ("The rationales advanced in the *Dewsnup* opinion for prohibiting lien stripping in Chapter 7 bankruptcies ... have little relevance in the context of rehabilitative bankruptcy proceedings under Chapter 11, 12, and 13, where lien stripping is expressly and broadly permitted."). It is well established that lien stripping is permissible in Chapter 13. See also, *In re Pond*, 252 F.3d 122 (2nd Cir.2001) (permitting the strip off of wholly unsecured junior liens on a Chapter 13 debtor's principal residence under 11 U.S.C. § 1322(b)(2)); *In re McDonald*, 205 F.3d 606 (3d Cir.2000) (same), cert. denied, 531 U.S. 822, 121 S.Ct. 66, 148 L.Ed.2d 31 (2000); *In re Bartee*, 212 F.3d 277 (5th Cir.2000) (same); *In re Lane*, 280 F.3d 663 (6th Cir.2002) (same); *In re Zimmer*, 313 F.3d 1220, 1227 (9th Cir.2002) (same); *In re Tanner*, 217 F.3d 1357 (11th Cir.2000) (same).

albeit in unpublished opinions, the stripping of valueless liens against principal residences in

Chapter 13 cases." *Branigan v. Davis (In re Davis)*, 716 F.3d 331, 335 (4th Cir (Md.) 2013)

<u>citing</u> *First Mariner v. Johnson*, 411 B.R. 221 (D. Md. 2009) and *SunTrust Bank* v. *Millard*, 414

B.R. 73 (D. Md. 2009), both of which followed the reasoning in *Johnson v. Asset Mgmt.*

B. <u>Although Confusion Exists as to the Precise Mechanics, Sections 506(a) and (d) Remain Vital to Chapter 13 Lien Avoidances</u>

After *Dewsnup* and *Nobelman*, avoidance of valueless junior liens are clearly permissible

in Chapter 13 cases; however, the precise legal mechanics for accomplishing the avoidances is not

uniformly accepted.  Additionally, careful review of bankruptcy-level avoidance complaints and

motions evidences a lack of clarity and uniformity in debtors' understanding of the legal basis for

value-based lien avoidances.  For example, a review of the original lien avoidance motion filed in

*Millard* reveals that Debtors provided absolutely no basis for the requested relief other than the

factual assertion of no value.[14] *SunTrust Bank v. Millard,* 414 B.R. 73.

This is underscored in Judge Lundin's treatise on Chapter 13 Bankruptcy, which

confirms that much confusion exists as to the continued application and legal effect of § <u>506(a)</u>

and <u>(d)</u>:

> On its face, 506(d), combined with 506(a), automatically voids a lien to
> the extent the allowed claim secured by that lien is unsupported by value
> in the collateral.  Unlike other avoidance sections which provide that a

---

[14] Given the lack of clarity usually seen by the Trustee in actions to value collateral and avoid security interests, Appellants' lien avoidance Complaint stands in stark contrast to the norm.  Appellants' Complaint expressly referenced the legal basis for the relief sought: specifically, classification of PNC and Tri-County's claims as wholly unsecured in accordance with § <u>506(a)</u>; avoidance of the underlying liens pursuant to § <u>506(d)</u> and modification of lenders' rights pursuant to § <u>1322(b)(2)</u>, as well as the rational contained within *Johnson v. Asset Mgmt.*  Also to their credit, Appellants expressly requested an order "appropriate for filing among the land records of the applicable county."  *Appellants' Avoidance Complaint* at para. 10-12, 16, 20, 23.  In other words, Appellants did an excellent job of referencing the statutes that allow for the relief requested while also requesting documentation required for real world practicalities.  In doing so, however, they brought to light § <u>506(a)</u> and <u>506(d)</u>'s explicit statutory requirements.   The thoroughness of the Complaint also shows that the Appellants were also initially convinced of the applicability of § <u>506(a)</u> and <u>(d)</u> to fully effectuate the desired lien avoidances.  <u>See</u>, *Complaint* at para. 10-12, 16, and 20.

trustee or a debtor may avoid a lien or transfer, Sections 506(d) provides
that a lien not supported by value in collateral is void.

This distinction is clearly reflected in section 551, which differentiates
between avoided transfers and liens that are void under 506(d).  This
means that a motion under 506(d) is technically not brought to avoid a lien
but only to declare that the lien unsupported by value is already void as a
matter of law."

Keith M. Lundin & Williams H. Brown, CHAPTER 13 BANKRUPTCY, 4TH EDITION § 128.1, at ¶ 40,

42, Sec. Rev. Nov. 4, 2011, www.Ch13online.com.

Lundin further notes that, by contrast, some courts "robustly anchor lien stripping in the

power to modify at confirmation under Section 1322(b)(2) and the vesting effect of confirmation

under Section 1327 (b) and (c),"

Even if *Dewsnup* was not distinguishable and § 506(d) was not a source of power
to strip a lien, a Chapter 13 debtor would still have the power to strip a lien
through other provisions of Chapter 13. The Bankruptcy Code gives the express
power to strip a lien through a plan or plan confirmation under Section 1322(b)(2)
and Section 1327.

Section 1322(b)(2) provides that a Chapter 13 plan may, with certain limitations,
"modify the rights of holders of secured claim."  ….

An additional source for stripping a lien is in Section 1327.  Under Section
1327(c) "except as otherwise provided in the plan or in the order confirming the
plan, the property vesting in the debtor…is free and clear of any claim or interest
of any creditor provided for by the plan.

*Id* at § 128.1, ¶ 44, <u>citing</u>, *In re Hernandez*, 175 BR 962, 967 (N. D. Ill 1994) (holding

that Section 1327(c)'s "free and clear" language provides the mechanism by which

Chapter 13 debtors can strip down creditor's liens without resorting to Code section

506(d)).

Contrast this position with the Fourth Circuit's analysis in *Davis*,

[A] completely valueless lien is classified as an unsecured claim under
section 506(a).  Only then does a bankruptcy court consider the rights of
lienholders under Section 1322, which affords protection to holders of

> secured claims against principal residences. Section 1322, however,
> expressly permits modification of the rights of unsecured creditors. The
> end result is that section 506(a), which classifies valueless liens as
> unsecured claims, operates with section 1322(b)(2) to permit a bankruptcy
> court, in a Chapter 13 case, to strip off a lien against primary residence
> with no value.

*Branigan v. Davis* (*In re Davis*), 716 F3d at 335, referencing, *Zimmer*, 313 F3d 1220,

1226-27 (9th Cir.2002) and *In re Lane*, 280 F.3d 663, 668 (6th Cir.2002).

Meanwhile, the Court of Appeals for the Tenth Circuit, although critical of the

reasoning and holding of *Dewsnup,* nevertheless acknowledged that it was bound by that

decision and refused to void a lien under § 506(d) alone.   See, *Woolsey v. Citibank, N.A*,

696 F.3d 1266, 1278 (10th Cir.2012).  As the opinion observed,

> [I]t's perhaps no surprise that of all the circuit courts approving of lien
> stripping in reorganization cases, not a single one has taken up the
> [debtor's] invitation to do so using § 506(d).  Instead, they have relied
> exclusively on other statutory provisions particular to those chapters.

*Woolsey,* 696 F.3d at 1278, citing, *Wade v. Bradford,* 39 F.3d 1126, 1129 (10th Cir.1994)

(permitting lien stripping in Chapter 12 cases under 11 U.S.C. § 1225(a)(5)); *In re Lane,*

280 F.3d 663 (6th Cir.2002) (permitting lien stripping in Chapter 13 cases under

11 U.S.C. § 1322(b)(2)); *see also In re Scantling,* 465 B.R. 671 (Bankr.M.D.Fla.2012)

("Section 506(d) must operate in tandem with another Bankruptcy Code provisions to

strip a lien").

However, § 1322(b)(2) alone also provides insufficient basis for such lien

avoidances.  See, e.g. *In re Stewart,* 408 B.R. 215, 219 (Bankr.N.D.Ind.2009),

interpreting *In re Hanson,* 397 F.3d 482 (7th Cir.2005) ("a chapter 13 plan, *in and of*

*itself,* cannot affect creditors' interests in a circumstance in which those interests are the

subject of a separate procedural mechanism under the Bankruptcy Code").  This position

is further supported by the general rule that lien avoidances are not effectuated until plan

completion or discharge.

> Any order entered in this adversary proceeding to determine the extent,
> priority, and validity of liens will contain language releasing liens
> effective only upon completion of the debtor's plan and entry of an order
> discharging the debtor. Therefore, the Adversary may proceed but release
> of the IRS' liens will occur, if at all, upon completion of Brinson's Plan
> and receipt of his Chapter 13 discharge.

*In re Brinson*, 485 B.R. 890, 902 (Bankr. N. D. Ill. 2013) (where the court determined

that § 506(a) and (d) work with other Code provisions to avoid valueless liens in Chapter

13 cases).

Similarly, the court in *Davis* suggests that § 506(a) and (d), together with other

provisions, effectuates line stripping:

> The Court noted that section 506 'and its relationship to other provisions of the Code do
> embrace some ambiguities.'  Given that ambiguity, the Court [in *Dewnsup*] declined to
> give 'allowed secured claim' the same meaning in section 506(d) as in section 506(a) and
> concluded that section 506 by itself is insufficient to effectuate lien stripping."

*Davis*, 761 F.3d at 337, citing, *Dewsnup,* 502 U.S. at 416.

And,

> While *Dewsnup* admittedly requires that Section 506 operate in tandem with other
> statutory provisions to effectuate lien stripping, Section 506 has always operated
> in tandem with Section 1322(b) to strip lien in Chapter 13 cases.

*Id.* at 338. [15]

Moreover, it is difficult to imagine how the liens in *Johnson v. Asset Mgmt* –based

avoidances are actually voided if not by application of §506(d).  Although § 506(d)'s avoidance

powers were not expressly discussed in the *Davis* opinion, the issue was raised in the context of

the Chapter 13 Trustee's Response where Trustee Branigan noted that, pursuant to

---

[15] Appellants references the same *Dewsnup* excerpt for the proposition that Chapter 13 lien avoidances are
accomplished only by the authority granted by §§ 506(a) and 1322(b)(2).  See *Appellants' Brief* at 15.

§ 349(b)(1)(C), dismissal of the case automatically reinstates any liens voided under § 506(d). *Davis,* 716 F.3d at 337.

Appellants, however, argue that Chapter 13 lien avoidances are accomplished solely by the authority granted by §§506(a) and 1322(b)(2), without reference to §506(d)'s avoiding powers. See, *Appellants' Brief* at 15-16. They cite to the same *Dewsnup* quotation recited by the Court in *Davis* to support this position. However, another interpretation is possible.

Although specific reference to § 506(d)'s voiding powers appears to have been largely dropped from legal parlance since *Dewsnup* was decided in 1992, it does not mean that § 506(d) has lost all relevance to lien-avoidance actions. By operation of the combined authority provided by §§ 506(a) and 1322(b)(2), as well as other Code provisions, Chapter 13 debtors may submit plans that modify rights of creditors. However, although § 1322(b)(2) gives Chapter 13 debtors the ability to modify the rights of creditors holding wholly unsecured liens, the mechanics are provided by the concurrent authority provided in §§ 506(a) and (d). These Sections provide the legal mechanisms for valuing claims and voiding liens.

Thus, Chapter 13 lien avoidances are not grounded § 506(a) and (d) nor §1322(b)(2) alone, but rely instead on the combined operative effect of various Code provisions, including confirmation-related provisions contained within §§ 1322 and 1325. While § 1322(b)(2) authorizes Chapter 13 plans that modify creditors' rights, such modifications necessarily involve actions authorized elsewhere in the Code.

By contrast, Appellants suggest that, under *Davis,* a disallowed claim automatically equates to an avoided lien, thereby bypassing the need for § 506(d). See, *Appellants Brief* at 16. However, Section 506(d) provides, "to the extent that a lien secures a claim against the debtor

that is not an allowed secured claim, such lien is void."  Thus, it is by the authority provided in

§ 506(d) that the actual lien avoidance occurs. [16]

## II. The Statute and Case Law Evidence the Need for Filed Proofs of Claim

In the Bankruptcy Court's ruling below, Judge Mannes follows an emerging body of

decisions concerning the validity of Chapter 13 claim-valuation a and lien-avoidance actions that

arise prior to the existence of filed proofs of claim.  These decisions focus on the precise wording

contained within § 506(a) and (d) to conclude that § 506(a) claim valuations and § 506(d) lien

voidances can only occur after an allowed claim has been filed in accordance with §§ 501, 502,

and R. 3002:

> The language of Section 506 and rule 3012 indicates that Congress contemplated
> a claim being field prior to a court establishing the value of a claim.  Section 506
> and rule 3012 speak in terms of valuing claims not collateral.  Because an order
> valuing security values the claim and not the collateral, filing a proof of claim
> must precede the motion to value.  It would be illogical to value something that
> does not yet exist.

*In re Burkhart*, 505 B.R. at 445, citing, *Brisco v. Unites States of America*, 486 B.R. 422, 426-27

(Bankr. N.D. Ill 2013).

The Supreme Court's interpretation of the term 'allowed claim' and 'allowed secured

claim' in *Dewsnup*, and the effect of a creditor's failure to file an allowed claim, closely matches

the interpretation given by Judge Mannes in his ruling—even to the point of noting the exception

for claims filed by other entities pursuant to § 501:

> In determining the secured status of a claim, the bankruptcy statute
> specifically exempts from being voided a claim that does not obtain

---

[16] See also., *In re Woolsey*, 696 F.3d 1266, 1272 (10th Cir.2012) (Where the Court discussed the effect of *Dewsnup* on Chapter 13 § 506(a) and (d) lien avoidances.  Under *Dewsnup*, the Court noted, valuation does not impact claim allowance.  Section 506(a) starts with, "An allowed claim of a creditor secured by a lien on property … " It is only after a § 506(a) valuation occurs that the term of art 'secured claim' and 'unsecured claim' become relevant.  The Court ultimately determined, however, that, absent § 1322(b)(2), § 506(d)-based lien avoidances are not possible in Chapter 13 after *Dewsnup*.)

"allowed secured" status solely because a creditor did not file proof of the claim.

*Id*., citing, *In re Kressler*, 40 Fed. Appx. 712, 713 (3rd Cir. 2002) (unpublished opinion).

> Tri-County did not file a proof of claim and, therefore, does not have an allowed secured claim. Its claim may not be evaluated under 11 U.S.C. §506(a), and its lien may not be avoided pursuant to 11 U.S.C. §506(d). The court finds no support for Debtors' argument that their case is supported by the Supreme Court's decision in *Dewsnup v. Timm,* 502 U.S. 410 (1999), as that case involved a case under Chapter 7, where the debtor sought to "strip down" a lien.
>
> In the absence of an allowed claim filed by Tri-County, the court may not enter an order that would avoid its lien. An order will be entered in accordance with the foregoing.

*Id*.

The question of whether filed proofs of claim must precede claims valuation and lien avoidances is a line of reasoning being raised by bankruptcy courts, and which has been upheld by at least one Federal District Court and one Circuit Court.   It appears to be a question of first impression within this circuit.  See, *In re Callahan*, 251 B.R. 170, 172-7 (Bankr. S.D.Fla. 2000); *In re Pajian, 2014 WL 1476945, *3 (Bankr. N.D. Ill 2014) (BR 13 B 25893)*; *In re Kressler*, 40 Fed. Appx. 712 (3rd Cir.2002) (unpublished) and *White v. FIA*, 494 B.R. 227 (W.D.Va. 2012). Although *Dewsnup*, *Nobleman*, *Johnson v. Asset Mgmt.*, and *Davis* discussed the mechanics of lien avoidance, none of these decisions addressed the precise question of whether a filed claim is necessary before lien avoidance may occur.  Moreover, as noted earlier, all of these decisions involved cases with actual, filed proofs of claims; therefore, § 506's reference to 'allowed claim' was not implicated.

In the instant case, Judge Mannes relied heavily on the analysis provided by the analysis contained within *White v. Fia Card Services,* where the District Court overruled the Bankruptcy Court's denial of a debtor's avoidance motion, holding that the § 506(d) lien avoidance could occur based on FIA's allowed, albeit unsecured, claim:

> *Reading [506](d)(2) as applicable only when a creditor has failed to file either type of allowed proof of claim[17] also makes sense in light of the purposes and legislative history of the subsection.*  A longstanding pre-Code rule allowed secured creditors to choose not to participate in a debtor's bankruptcy proceedings and still retain valid, enforceable liens once the debtor was discharged from bankruptcy. [18]  When the Bankruptcy Code was amended in 1978, it was unclear whether the principle remained good law.  In *Dewsnup*,[19] the Supreme Court resolved a circuit split by holding that "the pre-Code rule that liens on real property pass through bankruptcy unaffected" remains in effect.  The survival of this rule comports with the legislative history of §506(d)(2), which explains that the subsection was intended "to make clear the failure of the secured creditor to file a proof of claim is not a basis for avoiding the lien of the secured creditor."  S.Rep. No. 65, 98th Cong., 1st Sess. 79 (1983).

*White v. FIA Card Services*, 494 BR at 230 (emphasis added)*, citing Dewsnup,* 502 U.S. at 417 (internal citations provided in footnote form below).  Thus, the existence of a filed proof of claim is critical to § 506 and Chapter 13 lien avoidances.

This reading not only gives full weight to each section of the Code but also incorporates the reasoning provided in *Dewsnup, Johnson v. Asset Mgmt*, and the Fourth Circuit's decision in *Davis*.  Moreover, it reconciles the ambiguities noted in *Dewsnup* regarding § 506 and its relationship to other provisions of the Code in that – as the Court in *Davis* noted – it allows § 506 to work in harmony with other Code provisions.  See, *Davis*, 761 F.3d at 338.

Consequently, Appellant's argument that Judge Mannes' reference to *White v. FIA Card Svcs.* and *Dewsnup* as mere *dicta* appears misplaced.  See, *Appellants' Brief* at 11.  To the contrary, the excerpt and its reference to § 506 appear pivotal.  What Appellants have declared "mere dicta" appears inextricably interwoven with the legal basis of the Court's decision that

---

[17] Regardless of whether filed as a secured or an unsecured claims.

[18] See, e.g., *Unites States Nat'l Bank v. Chase Nat'l Bank*, 333 U.S. 28, 33, 67 S.Ct. 1041 (1947); *Louisville Joint Stock Land Bank v. Radford,* 295 U.S. 555, 582-83, 55 S.Ct.854 (1935); *Long v. Bullard*, 117 U.S. 617, 620-21, 6 S.Ct. 917 (1886).

[19] Accord, *In re Hamlett*, 322 F.3d 342, 347-48 (4th Cir. 2003) (secured creditor may disregard bankruptcy proceeding, decline to file a claim, and rely solely upon its security) and *Cen-Pen Corp. v. Hanson*, 58 F.3d 89 (4th Cir.1995)(creditor's lien survived bankruptcy despite Debtor's treatment of underlying debt as an unsecured claim).

despite §1322(b)(2)'s modification provision, an allowed claim is necessary under both

§§ 506(a) and (d) before either classification of the claim as secured or unsecured, or avoidance

of the lien securing the claim, may be accomplished.  *Burkhart,* 505 B.R. at 44, citing, *White v.*

*FIA Card Svcs.*, 494 B.R. at 230.

### A. The Time for Filing Proofs of Claim is *Prior* to Lien Avoidances

Finally, Appellant's argument that the time for filing proofs of claim has not elapsed

pursuant to R. 3002(c)(3) appears irrelevant, particularly given that R 3002(c)(1) likely refers to

the filing of an amended, unsecured deficiency claim that arises in favor of an entity after a lien

avoidance judgment -- which actually supports Judge Mannes's ruling.  The time period in effect

at the time Appellants filed their adversary complaint case was R. 3004, which allows for the

filing of a proof of claim by the trustee or debtor within thirty (30) days after the initial claims

bar date has run (in this case, May 16, 2013), in accordance with R. 3002 and §§ 501 and 502 of

the Code.

This right or access to the claims-filing process resolves Appellants' alleged due process

concerns.  Here, equal access has not been denied; it has merely been conditioned upon the

existence of a condition precedent that an allowed claim be filed prior to the valuation and

voiding of any lien securing such claim.  Significantly, the condition precedent was within

Appellants' control.

### CONCLUSION

As the Bankruptcy Court observed, Appellants seek a benefit which, under the Court's

reading of the Code, comes attached with conditions.  That is, the existence of a filed proof of

claim.  This condition precedent arguably serves to offset the pre-Code long-standing rule that

liens pass through bankruptcy unaffected.  *Dewsnup*, 502 U.S. at 417.  Thus, Debtors get the

benefit of a fresh start and creditors get the benefit of their security interest or payments under Chapter 13 plans.

Although application of § 506 to Chapter 13 lien avoidances has been questioned by some courts, it is clear that, in the Fourth Circuit at least, the Section is intended to work in tandem with other Code provisions to effectuate value-based lien avoidances.   Thus, Appellants' argument that the Bankruptcy Court erred in its emphasis on § 506(a) and (d)'s 'allowed claim' language is misplaced.  Moreover, given Appellants' own reliance on the same Code provisions in their initial adversary complaint, their current argument that § 506(d) is inapplicable to lien avoidances appears contrived.  Despite the confusion that exists regarding the precise mechanics of Chapter 13 lien avoidances, both § 506(a) and § 506(d) remain vital.

An emerging body of law supports Judge Mannes's decision below, holding that without an allowed proof of claim filed on behalf of the secured lien holder, a debtor may not successfully avoid the security interest pursuant to § 506(d).  Additionally, this interpretation allows the Bankruptcy Code to be read as a whole.  Consequently, given the facts of the case, the Bankruptcy Court's ruling was appropriate because the requisite valuation and avoidance of Tri-County's liens was not possible under § 506(a) and (d) where no claim has been filed.  This Court should, therefore, affirm the Bankruptcy Court's Order.

Dated: September 5, 2014                    Respectfully Submitted,

                                            _____//s//_____
                                            Mary Park McLean, Esquire (#25580)
                                            Rebecca A. Herr, Esquire (#29298)
                                            Office of Nancy Spencer Grigsby
                                            Chapter 13 Trustee
                                            4201 Mitchellville Road, Suite 401
                                            Bowie, MD 20716
                                            Email: mmclean@ch13md.com
                                            bherr@ch13md.com

<u>REQUEST FOR RULING ON THE PAPERS</u>

Pursuant to Fed. R. Bankr. P. 8012 Appellee asserts that the facts and legal arguments are adequately presented in the briefs and record and sees no need for a hearing.  Appellee, therefore, requests a ruling on the papers.

_____//s//_____
Mary Park McLean
Rebecca A. Herr


## **CERTIFICATE OF SERVICE**

I hereby certify that this Brief of Appellee was served this September 5, 2014 electronically to those recipients authorized to receive a Notice of Electronic Filing by the Court, and/or by first class mail, postage prepaid to:

Michael Edwin Burkhart
Teresa Stein Burkhart
c/o The Burns Law Firm, LLC
6303 Ivy Lane, Suite 102
Greenbelt, MD  20770
*Debtor/Appellants*

John D. Burns, Esquire
The Burns LawFirm, LLC
6303 Ivy Lane, Suite 102
Greenbelt, Maryland 20770
*Counsel to Appellants*

Gerard Vetter, Esquire
Assistant U.S. Trustee
6305 Ivy Lane,
Suite 600,
Greenbelt, MD 20770

Community Bank of Tri-County
William J. Passinelli, President
3035 Leondardtown Rd.
Waldorf, MD  20601
*Creditor*

**/s/ Mary Park McLean**

S:\Case Notes 2012\12-26888 Tees Resp\12-26888 Tee Resp FINAL 9 5 14.doc