**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **EDWIN MICHAEL BURKHART,** *et al.*, | * | |
| | * | |
| Debtor-Appellants | * | |
| | * | |
| | * | |
| v. | * | Civil No. **PJM 14-315** |
| | * | |
| **COMMUNITY BANK** | * | |
| **OF TRI-COUNTY**, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| and | * | |
| | * | |
| **NANCY SPENCER GRIGSBY,** | * | |
| ***Chapter 13 Trustee,*** | * | |
| | * | |
| Necessary Party. | * | |

**MEMORANDUM OPINION**

This Chapter 13 bankruptcy case is on appeal from an Order of the United States Bankruptcy Court for this District. *See Burkhart, et al. v. Community Bank of Tri County, et al.* (*In re Burkhart, et al.*), Ch. 13 Case No. 12-26888, Adv. No. 13-00291 (Bankr. D. Md.). After obtaining a lift-stay order from the Court, Debtor-Appellants Edwin Michael Burkhart and Teresa Stein Burkhart (the "Burkharts") brought an adversary proceeding seeking to avoid wholly unsecured liens attached to their residential real property. Appellee Community Bank of Tri-County ("Tri-County"), which held two of these liens, failed to file timely proofs of claim. When Tri-County did not respond to the Burkharts' adversary Complaint, the Burkharts moved for default judgment. The Bankruptcy Court, however, denied the Burkharts' motion, ruling that Tri-County's liens could not be avoided in the absence of theirs being an "allowed claim"—that is, a claim for which a proof of claim had been filed. The Burkharts have appealed the

Bankruptcy Court's order. For the reasons that follow, the decision of the Bankruptcy Court is **AFFIRMED**.

**I.**

The Burkharts, who perform government contract work, have accrued substantial obligations in the form of mortgages and liens against their homestead as well as other unsecured debts. Am. Appellant's Br. 6, ECF No. 8.

On September 14, 2012, they filed a Voluntary Petition for Bankruptcy under Chapter 13 of the Bankruptcy Code. Voluntary Petition, ECF No. 1-1. That same day, the Bankruptcy Court entered a Notice of Commencement of Chapter 13 Bankruptcy Case, Meeting of Creditors, & Deadlines, which informed the Burkharts' creditors that the bar date for claims (the "Bar Date") for non-governmental units was January 23, 2013. Notice of Commencement, ECF No. 1-7.

On May 16, 2013, nearly four months after the Bar Date, the Burkharts, following a lift-stay, filed a Complaint (in this Court) to Declare Validity, Scope and Extent of Liens of Community Bank of Tri-County and PNC Bank (the "Complaint"). Compl., ECF No. 1-64. The Complaint sought to remove wholly unsecured liens attached to the Burkharts' real property located at 2060 Barakat Court, Huntingtown, Maryland 20639 (the "Property").[1] *See generally id.* The Property was valued at $435,000.00.[2] Compl., Ex. 1, ECF No. 1-65. The Burkharts alleged that the following claims were secured by the Property: (1) a first priority lien in favor of

---

[1] The Complaint originally sought relief under 11 U.S.C. §§ 506(a), <u>506(d)</u>, and 1322(b). The Burkharts later amended their position, claiming that they sought relief only under 11 U.S.C. §§ 506(a) and 1322(b). This change in position is significant, as subsection § 506(d) bars avoiding claims which are not allowed claims due only to the failure of an entity to "file a proof of such claim." The Court will address the relevance of § 506(d) to this Appeal in Part IV.A, *infra.*

[2] The Complaint alleges that the value of the Property is $445,000.00. Compl. ¶ 6. However, a Residential Broker Price Opinion attached as an exhibit to the Complaint suggests that the valuation of the Property "as is" is $435,000.00. The difference in these valuation figures does not bear on the merits of the Burkharts' Appeal.

Chase Bank in the amount of approximately $609,500.00[3]; (2) a junior lien in favor of PNC Mortgage ("PNC") in the amount of $105,995.75; (3) a junior lien in favor of Tri-County in the amount of $78,289.71; and (4) a junior lien in favor of Tri-County in the amount of $49,411.80. Compl. ¶¶ 7-8. The Burkharts alleged that while PNC had filed a timely proof of claim, Tri-County had not, and thus "forfeit[ed] any distributions under a plan in this case." *Id.* ¶ 8.

The Complaint was properly served on PNC and Tri-County. Certificate of Service, ECF No. 1-86. On September 23, 2013, after neither creditor responded, the Burkharts moved for a clerk's entry of default and default judgment. Mot. Entry Clerk's Default and Default J., ECF No. 1-89. On the same day, the Clerk entered a default against both PNC and Tri-County. Entry of Default, ECF Nos. 1-91, 1-92.

On September 29, 2013, the Bankruptcy Court entered a default judgment against PNC, which had the effect of the Burkharts avoiding the lien held by PNC. Order Granting Mot. Default as to PNC, ECF No. 1-95. With respect to Tri-County, however, the Bankruptcy Court denied the motion for default judgment without prejudice. Order Denying Mot. Default as to Tri-County, ECF No. 1-96.

In response to the Bankruptcy Court's denial, the Burkharts filed an Amended Motion for Default Judgment against Tri-County. Am. Mot. Default J. as to Tri-County, ECF No. 1-99. They again sought a declaratory ruling to avoid Tri-County's liens as *in rem* claims because they were purportedly valueless, and thus wholly unsecured.[4] *Id.* This time, the Burkharts also pointed to Federal Rule of Bankruptcy Procedure 3002(c)(3), which allows an entity to file a proof of claim "30 days after the judgment becomes final if judgment . . . avoids the entity's interest in

---

[3] The Burkharts scheduled a first priority lien in favor of Chase in the amount of $609,500.00. *See* Compl. ¶ 7; *see also* Summary of Schedules, Schedule D, ECF No. 1-10. U.S. Bank National Association, as trustee for Chase Bank, filed a proof claim for $613,042.88. Claims Register, Claim No. 10-1.

[4] In their pleading, the Burkharts again cited 11 U.S.C. §§ 506(a), 506(d), and 1322(b) as the basis for the relief sought. *See* text accompanying note 1, *supra*.

property." *Id.* ¶ 5. (quoting Fed. R. Bankr. P. 3002(c)(3)). The Burkharts suggested that, if the Bankruptcy Court were to grant the Burkharts' Amended Motion for Default Judgment, Tri-County would still be able to file its lien as an unsecured claim and thus participate in the bankruptcy process. *See id.*

On October 25, 2013, the Bankruptcy Court issued a Memorandum Opinion with respect to the Amended Motion for Default Judgment ("Bankruptcy Court Memorandum 1"), adopting the reasoning of *White v. FIA Card Services, N.A.*, 494 B.R. 227, 230 (W.D. Va. 2012), and concluding that 11 U.S.C. § 506(d)(2) only voids a lien that secures a claim against the debtor which is not an allowed secured claim, except when that claim is not treated as an allowed secured claim simply because the creditor has elected not to file a proof of claim. Bankr. Ct. Mem. 1 at 2-3, ECF No. 1-101. Thus, as the Bankruptcy Court reasoned, since Tri-County had not filed a proof of claim, its lien could not be avoided by reason of § 506(d)(2). *Id.* 3. The Bankruptcy Court gave the Burkharts fourteen days to respond. *Id.*

On November 12, 2013, the Burkharts filed a response, arguing that they were not seeking to "*void*" Tri-County's lien under 11 U.S.C. § 506(d), but rather to "*avoid*" the lien under 11 U.S.C. §§ 506(a) and 1322(b). Burkharts' Resp. to Mem. Op. Am. Mot. Default 6-7, ECF No. 1-103. The Burkharts argued that fifteen years of Fourth Circuit law permitted the lien avoidance they sought under 11 U.S.C. §§ 506(a) and 1322(b). *Id.* 7-11.

On January 9, 2014, the Bankruptcy Court issued a second opinion and order dealing with the Amended Motion for Default Judgment ("Bankruptcy Court Memorandum 2"), reaffirming its earlier position that, absent an allowed claim filed by Tri-County, the court could not enter an order that would avoid its lien. Bankr. Ct. Mem. 2 at 3, ECF No. 1-104. As the Bankruptcy Court reasoned, since Tri-County did not file a proof of claim, it did not not have an

allowed secured claim. Accordingly, its claim could not be evaluated under 11 U.S.C. § 506(a), and its lien could not be avoided pursuant to 11 U.S.C. § 506(d).[5] *Id.* In consequence, the Bankruptcy Court issued an order dismissing the Burkharts' Complaint without prejudice as to Tri-County. Order Dismissing Compl. ECF No. 1-105.

This Appeal followed. ECF No 1.

## II.

On appeal, the Burkharts contend that the Bankruptcy Court erred in dismissing their adversary proceeding against Tri-County. They submit that their Complaint was a "garden variety" lien avoidance action under 11 U.S.C. §§ 506(a) and 1322(b); that lien avoidances in Chapter 13 cases under § 506(a) and § 1322(b) have a long history in the Fourth Circuit; and that language in 11 U.S.C. § 506(d) – which requires the filing of a proof of claim prior to declaring any lien "void" – is immaterial to the relief they seek.[6] Am. Appellants' Br. 11, 13-17. They also suggest that Federal Rule of Bankruptcy Procedure 3002(c)(3), which governs the process for filing proofs of claim, supports their position because it would allow Tri-County to file a proof of its unsecured claim after default judgment. *See id.* 17-19; *see also* Appellants' Suppl. Br. 6-11.

In response, the Trustee argues that the Bankruptcy Court was correct to rely on §§ 506(a) and 506(d) which, together with § 1322(b)(2), form the basis for value-based lien avoidances in Chapter 13 proceedings. Appellee's Br. 10, ECF No. 12. Although the mechanism for value-based lien avoidances is frequently misunderstood by debtors, the "voiding" component is found in § 506(d). *See id.* 11-15, 19-20. As the Trustee explains, § 506(d) does not

---

[5] On January 23, 2014, the Bankruptcy Court issued an Amended Memorandum of Decision ("Bankruptcy Court Amended Memorandum 2"), noting that either the Burkharts themselves, as well as Tri-County, could have filed proof of Tri-County's liens on the Property. Bankr. Ct. Am. Mem. 2 at 3-4, ECF No. 1-110.

[6] The Burkharts have changed their position with respect to the statutory provisions relevant to the avoidance of Tri-County's liens. As noted in note 1, *supra*, the Burkharts originally pled that Tri-County's liens should be voided under 11 U.S.C. §§ 506(a), 506(d), and 1322(b)(2).

allow lien avoidance when the underlying claim is not "allowed" because a proof of that claim has not been filed. *Id.* 20-23. According to the Trustee, the Burkharts are effectively seeking to bypass the proof of claim and claim allowance processes with respect to Tri-County. Such a maneuver, says the Trustee, is not only improper under the plain text of the applicable statutory provisions; it also fails to respect the underlying policies of bankruptcy law. *Id.* 23-24; *see also* Appellee's Suppl. Br. 2, ECF No. 2. The Trustee also argues that Bankruptcy Rule 3002(c)(3) is irrelevant to the analysis, but if anything, undermines the Burkharts' arguments. *Id.* 23; *see also* Appellee's Suppl. Br. 3-7.

## III.

The Court has jurisdiction over this Appeal pursuant to 28 U.S.C. § 158(a)(1), which gives "[t]he district courts of the United States . . . jurisdiction to hear appeals (1) from final judgments, orders, and decrees; . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title."

The issue raised in this case – i.e., whether a Chapter 13 debtor can avoid a completely unsecured junior lien when no proof of claim has been filed – is a question of law. Legal questions decided by the bankruptcy court are subject to *de novo* review in the district court. *In re Meredith*, 527 F.3d 372, 375 (4th Cir. 2008).

## IV.

The issue before the Court appears to be one of first impression.

The Court begins with a brief overview of the relevant statutory provisions and case law.

## A.

Chapter 13 of the Bankruptcy Code allows individual debtors to "obtain adjustment of their indebtedness through a flexible repayment plan approved by a bankruptcy court."

*Nobleman v. American Savings Bank, et al.*, 508 U.S. 324, 327 (1993). The elements of a confirmable Chapter 13 plan are set forth in 11 U.S.C. § 1322, which provides, in part, that a plan may

> *modify the rights of holders of secured claims*, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.

11 U.S.C. § 1322(b)(2) (emphasis added).

The concept of "lien stripping" refers to one method of modifying the rights of holders of secured claims under § 1322(b)(2) when the value of the underlying collateral is less than the value of the lien. "Lien stripping" turns on another section of the Bankruptcy Code, 11 U.S.C. § 506(a), which allows a bankruptcy court to determine whether a particular claim that is "secured" under commercial law "is, or is not, a 'secured claim' in the context of the Bankruptcy Code." *See Johnson v. Asset Mgmt. Grp. LLC*, 226 B.R. 364, 366 (D. Md. 1998). "Whether a lienholder has a 'secured claim' or an 'unsecured claim,' in the sense in which those terms are used in the Bankruptcy Code, depends on whether the lienholder's interest in the collateral has economic value." *First Mariner Bank v. Johnson*, 411 B.R. 221, 224 (D. Md. 2009), *aff'd sub nom. In re Johnson*, 407 F. App'x 713 (4th Cir. 2011) (quoting *In re Lane*, 280 F.3d 663, 664 (6th Cir. 2002)).[7] Section 506(a) provides, in pertinent part:

> (a)
>   (1) An *allowed claim* of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, *is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property*, or to the extent of the amount subject to setoff, as the case may be, *and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim.* . . .

---

[7] Under § 506 of the Bankruptcy Code, in other words, a second mortgagee whose lien on a Chapter 13 debtor's property is "completely under water," "holds [a completely] *unsecured claim* [for purposes of the Bankruptcy Code], regardless of the fact that the second mortgage was secured by a *lien* on the debtor's principal residence." *First Mariner Bank*, 411 B.R. at 224 (emphasis in original) (internal citations and quotations omitted).

(2) If the debtor is an individual in a case under chapter 7 or 13, such value with respect to personal property securing an allowed claim shall be determined based on the replacement value of such property as of the date of the filing of the petition without deduction for costs of sale or marketing.

11 U.S.C. § 506(a) (emphasis added). This subsection, then, effectively divides a creditor's "allowed claim," as defined under 11 U.S.C. § 502(a),[8] into a "secured" portion – which generally equals the replacement value of the property on the bankruptcy petition date – and an "unsecured" portion. *See* 11 U.S.C. § 506(a); *see also In re Davis*, 716 F.3d 331, 339 (4th Cir. 2013) (noting that § 506(a) operates to bifurcate "a claim secured by property into secured and unsecured components based on value"). Once the "allowed claim" is valued under § 506(a), the lien may, at least in some circumstances, be "stripped"—that is, reduced to the value of the underlying collateral. In general, there are two types of lien stripping. In a "strip off," the entire lien is removed, whereas in a "strip down" a lien is bifurcated into secured and unsecured claims pursuant § 506(a), with only the unsecured claim component being removed. *Johnson*, 226 B.R. at 365 n.3 (D. Md. 1998) (internal citations omitted). In the Chapter 13 context,[9] the Supreme Court held in *Nobleman v. American Savings Bank, et al.* that a debtor cannot "strip down" a lien on a principal residence that is at least partially secured and reduce the mortgage to the fair market value of the mortgaged residence. 508 U.S. at 325-26, 332. However, post-*Nobleman*, the

---

[8] Eleven U.S.C. § 502 governs the allowance of claims or interests in bankruptcy proceedings. Subsection 502(a) states: "A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." The Court will further address the significance of this section in Part IV.B, *infra*.
[9] The availability of "lien stripping" depends on the chapter of the Bankruptcy Code under which the debtor's petition was filed. In Chapter 7 cases, for example, lien stripping is not available at all. *Dewsnup v. Timm*, 502 U.S. 410 (1992). However, as discussed in this Part, *infra*, courts (including the Fourth Circuit) have held that lien stripping is permitted to a limited extent in Chapter 13 cases.

Fourth Circuit has held that a Chapter 13 debtor may "strip off" wholly unsecured junior homestead liens. *Davis*, 716 F.3d at 336.[10]

The core dispute before the Court at this time pertains to the precise mechanism for "stripping off" or avoiding a valueless junior lien in a Chapter 13 case. The Bankruptcy Court concluded that it is imperative to refer to another subsection of 11 U.S.C. § 506 – § 506(d) – and consider it in tandem with §§ 506(a) and 1322(b)(2) to effectuate the strip off. *See* Bankr. Ct. Mem. 1 at 2-3; Bankr. Ct. Mem. 2 at 3. Subsection 506(d) provides:

> (d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, *such lien is void*, unless—
>> (1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or
>> (2) *such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim* under section 501 of this title.

11 U.S.C. § 506(d) (emphasis added). As the Bankruptcy Court reasoned, § 506(a) sets forth the manner in which a lien against real property is evaluated (in terms of being secured or unsecured), but § 506(d) is the vehicle by which a lien, along with § 1322(b)(2) (and other Bankruptcy Code provisions) – if it is not an allowed secured claim – may actually be avoided. *See* Bankr. Ct. Mem. 1 at 2-3. This distinction is important because § 506(d)(2) expressly precludes avoiding a lien that is "not an allowed secured claim" if that lien is not an allowed secured claim "due only to the failure of any entity to file a proof of such claim."

In the present case, Tri-County did not file proof of claims for its junior liens on the Property, nor did the Burkharts or the Trustee do so with respect to Tri-County's liens.[11] Can the Burkharts "strip off" or avoid those liens?

---

[10] Other circuits that have considered this issue have also concluded that a bankruptcy court may strip off a valueless junior lien in a typical Chapter 13 proceeding. *See Davis*, 716 F.3d at 335 (citing *Zimmer v. PSB Lending Corp.*, 313 F.3d 1220 (9th Cir. 2002); *Lane v. W. Interstate Bancorp*, 280 F.3d 663 (6th Cir. 2002); *Pond v. Farm Specialist Realty*, 252 F.3d 122 (2d Cir. 2001); *Tanner v. FirstPlus Fin.*, 217 F.3d 1357 (11th Cir.2000); *Bartee v. Tara Colony Homeowners Ass'n*, 212 F.3d 277 (5th Cir. 2000); *McDonald v. Master Fin.*, 205 F.3d 606 (3d Cir. 2000)).

**B.**

Three Bankruptcy Code provisions form the basis for the Bankruptcy Court's conclusion that the Burkharts may not avoid Tri-County's liens for which no proof of claim had been filed: 11 U.S.C. §§ 502(a), 506(a), and 506(d). The Court agrees that these provisions bar avoiding Tri-County's liens.

### *1. The Voiding Power of § 506(d)*

As discussed above, § 506(d) provides that a lien cannot be declared "void" if such claim "is not an allowed secured claim due only to an entity's failure to file proof of claim." *See* 11 U.S.C. § 506(d). If this section is a necessary component of lien avoidance, as the Trustee contends, then it expressly forecloses avoiding those liens which are "not allowed" because there are no filed "proof[s] of such claim[s]," which is the case with Tri-County's liens in this proceeding.

The role of § 506(d) in Chapter 13 lien avoidance actions is not entirely illuminated by Fourth Circuit and District of Maryland decisions. In *Davis*, the Fourth Circuit discusses "strip down[s]" and "strip off[s]" in a Chapter 13 proceeding, citing only §§ 506(a) and 1322(b)(2), 716 F.3d at 335-36, as does the District of Maryland in *Johnson*, 226 B.R. at 365-66 and *First Mariner Bank*, 411 B.R. at 223. But in those cases, the courts were addressing a broader issue – namely, whether a court may, as a matter of law, strip off a completely unsecured junior homestead lien in a Chapter 13 case. The courts did not address the role and effect of § 506(d) in a lien avoidance action, nor did they consider whether language in § 506(d) precluded lien avoidance in certain circumstances.

The Court finds certain considerations persuasive.

---

[11] Eleven U.S.C. § 501(a) provides that a creditor or indenture trustee may file proof of claim. If the creditor does not timely file a proof of the creditor's claim, the debtor or trustee may file proof of such claim pursuant to § 501(c).

*First*, Supreme Court precedent, albeit in the Chapter 7 context, suggests that § 506(d) is necessary to effectuate a lien "strip down" or "strip off." In *Dewsnup v. Timm*, the Court concluded that a lien that is at least partially secured by collateral, following a § 506(a) valuation, is not avoidable under § 506(d). 506 U.S. 410, 418 (1992). The Court's analysis thus implies that § 506(d) was the specific provision through which avoidance should occur after valuation under § 506(a). *See id.* The Supreme Court recently affirmed this view in *Bank of America v. Caulkett*,[12] another Chapter 7 case, holding that Chapter 7 debtors could not strip off junior mortgage liens under § 506(d) that were wholly unsupported by equity in mortgaged property. 135 S. Ct. 1995, 2000 (2015). The Court's reasoning again strongly suggests that lien avoidance depends upon an interplay between §§ 506(a) and 506(d) of the Bankruptcy Code (as well as other provisions).[13]

*Second*, despite the fact that specific reference to § 506(d)'s voiding powers does not always appear in legal discussion post-*Dewsnup*, the failure to reference the provision does not mean that it has no relevance to lien avoidance actions. Indeed, several courts have concluded to the contrary. *See, e.g.*, *In re Woolsey*, 696 F.3d 1266, 1272-73 (10th Cir. 2012) (discussing the mechanisms for Chapter 13 lien avoidance actions under §§ 506(a) and 506(d) after *Dewsnup*);

---

[12] The parties in the present originally requested to delay a hearing on this Appeal pending the outcome of *Caulkett*, which the Court granted. When the Court eventually held oral argument on this Appeal, the Burkharts suggested that *Caulkett* supported their position. Since the parties had not briefed this issue, the Court allowed them to submit supplemental briefing to address the impact of *Caulkett*. In their supplemental filings, both parties acknowledged that *Caulkett* does not directly apply to the question before the Court because *Caulkett* involved a Chapter 7 proceeding. *See* Appellants' Suppl. Br. 5-6; Appellees' Suppl. Br. 2. However, the Trustee also suggested that *Caulkett* demonstrates, if only by inference, that Chapter 13 lien avoidances are based on additional provisions contained within the Code, including § 506(d). The Court is of the same mind.

[13] In a Chapter 13 case, *Nobelman v. Am. Sav. Bank*, the Supreme Court rejected the proposition that § 506(a), alone, "operates automatically to adjust downward the amount of a lender's undersecured home mortgage." 508 U.S. at 328-32. As such, the Supreme Court indicated that modifying a lienholder's rights in large part depends upon other provisions of the Bankruptcy Code. In this way, the Supreme Court's opinion can be read to reinforce the interplay between § 506(a) and § 1322(b)(2) and other provisions of the bankruptcy Code, such as § 506(d).

*In re Kressler*, 40 Fed. App'x 712, at *1 (3d Cir. 2002) (citing the voiding powers of § 506(d) in addressing whether a lien had been avoided despite the fact that the lien had not obtained "allowed secured status" for failure of a proper party to file timely proof of claim); *White v. Fia Card Services*, 494 B.R. at 230-31 (discussing the impact of § 506(d) in a Chapter 13 lien avoidance action); *In re Scantling*, 465 B.R. 671, 676 (S.D. Fla. 2012) (noting that "§ 506(d) does not operate by itself to strip a lien; it must operate in tandem with another provision to strip a lien"); Keith M. Lundin & Williams H. Brown, Chapter 13 Bankruptcy, 4th Edition § 128.1, at ¶ 40 ("On its face, § 506(d), combined with § 506(a), automatically voids a lien to the extent the allowed claim secured by that lien is unsupported by value in the collateral."); *see also Matter of Lindsey*, 823 F.2d 189, 189-90 (7th Cir. 1987) (explaining, in the context of a Chapter 7 case, that lien stripping results from the "combined effect" of §§ 506(a) and 506(d)).

*Third*, it is hard to imagine what other purpose § 506(d) would serve in the broader context of the Bankruptcy Code if it did not play a role in lien avoidance actions. "In interpreting a statute, we should strive to give effect to every word that Congress has used" to avoid surplusage. *Healthkeepers, Inc. v. Richmond Ambulance Auth.*, 642 F.3d 466, 472 (4th Cir. 2011) (quoting *Clinchfield Coal Co. v. Harris*, 149 F.3d 307, 313 (4th Cir. 1998)). If a Chapter 13 lien could be "stripped off" or avoided solely through §§ 506(a) and 1322(b)(2), as the Burkharts contend, what would be the function of the language in § 506(d), which provides that, "To the extent that a lien secures a claim against the debtor that is not an *allowed secured claim*, such lien is *void*" (emphasis added)? Unless § 506(d) is relevant to lien avoidance, the Court would be constrained to conclude that the provision is mere surplusage.

For these reasons, the Court concludes that § 506(d), working in tandem with §§ 506(a) and 1322(b), constitutes the statutory mechanism for stripping off a wholly unsecured junior lien

in a Chapter 13 case. Since § 506(d)(2) does not permit declaring a lien void when that lien is not

an "allowed secured claim" "simply because the creditor has elected not to file a proof of claim,"

*Cen-Pen Corp. v. Hanson*, 58 F.3d 89, 93 (4th Cir. 1995), Tri-County's liens, for which no proof

of claim was filed, cannot be avoided. *See Kressler*, 40 Fed. App'x at *1-3; *White*, 494 B.R. at

230-31. This result, moreover, makes sense in light the legislative history of § 506(d)(2). As the

court explained in *White*:

> A longstanding pre-Code rule allowed secured creditors to choose not to participate in a
> debtor's bankruptcy proceedings and still retain valid, enforceable liens once the debtor
> was discharged from bankruptcy. . . In *Dewsnup v. Timm* . . . the Supreme Court resolved
> a circuit split by holding that "the pre-Code rule that liens on real property pass through
> bankruptcy unaffected" remained in effect. The survival of this rule comports with the
> legislative history of § 506(d)(2), which explains that *the subsection was intended "to
> make clear the failure of the secured creditor to file a proof of claim is not a basis for
> avoiding the lien of the secured creditor."* S.Rep. No. 65, 98th Cong., 1st Sess. 79
> (1983). This explanation simply confirmed the long-standing rule that creditors could
> choose not to participate in bankruptcy proceedings without risking the loss of pre-
> existing liens.

494 B.R. at 230 (emphasis added).

### 2.   *Valuing an "Allowed Claim" under § 506(a)*

Even excluding § 506(d) from the statutory analysis – and assuming that lien avoidance

in Chapter 13 cases could be accomplished solely through §§ 506(a) and 1322(b)(2), as the

Burkharts suggest – the Court would arrive at the same conclusion.

The plain language of § 506(a) requires that, in order to value a claim against property

into secured and unsecured components, that claim must be "allowed." *See* 11 U.S.C. § 506(a)

"An *allowed claim* of a creditor secured by a lien on property . . . ") (emphasis added). The

concept of an "allowed claim" is a term of art in the Bankruptcy Code, requiring the court to turn

to another provision, 11 U.S.C. § 502, to further assess its meaning. Under § 502(a), "A claim or

interest, *proof of which is filed under section 501 of this title*, is deemed allowed, unless a party

in interest, including a creditor of a general partner in a partnership that is a debtor in a case

under chapter of this title, objects." In other words, this subsection provides that, once a party files a proof of claim, that claim will be considered "allowed" so long as no interested party lodges an objection. Generally speaking, if no party begins this process by filing a proof of claim for a particular lien (pursuant to 11 U.S.C. § 501), that lien does not enter the claims allowance process,[14] and the claim therefore cannot be considered "allowed."[15]

Reading §§ 506(a) and 502(a) together, then, the logical conclusion is that a filed proof of claim is a prerequisite to establishing the value of a security. *See In re Brisco*, 486 B.R. 422, 426 (Bankr. N.D. Ill. 2013) (holding that filing a proof of claim is a necessary prerequisite to establishing the value of a security under § 506(a)); *In re Callahan*, 251 B.R. 170, 172-73 (Bankr. S.D. Fla. 2000) (same); *In re King*, 165 B.R. 296, 299 (Bankr. M.D. Fla. 1994) (same).

Still, the Burkharts point to Federal Rule of Bankruptcy Procedure 3002, which sets forth the time limits, the form, and the procedure for filing proofs of claim. With respect to timing, subsection (c) of the Rule states, in part:

> TIME FOR FILING. In a chapter 7 liquidation . . . or chapter 13 individual's debt adjustment case, a proof of claim is timely filed if it is filed *not later than 90 days after the first date set for the meeting of creditors called under § 341(a) of the Code*, except as follows:

---

[14] "Claims allowance (or, perhaps more appropriately, claims disallowance) under Section 502 is a process whereby the trustee and other parties in interest challenge either the amount or the validity of the creditor's claim." *In re Stiller*, 323 B.R. 199, 212 (Bankr. W.D. Mich. 2005) (internal citations omitted).

[15] Notably, the "informal proof of claim doctrine" is an exception to the general rule that proofs of claim are required for claims allowance in bankruptcy. This doctrine "is a common law equitable doctrine that allows a variety of writings to qualify as a proof of claim under the Code, even if they were not originally intended as such." *In re Uwimana*, 284 B.R. 218, 220 (D. Md. 2002). This doctrine essentially permits "creditors who have failed to adhere to the strict formalities of the Bankruptcy Code but who have taken some measures to protect their interests in the bankruptcy estate to preserve those interests by showing that they have complied with the spirit the rules." *Id.* (internal citations and quotations omitted). The Burkharts point to the informal proof of claim doctrine in support of their position on appeal, contending that the principles underlying the doctrine demonstrate that claims allowance is a "flexible concept." Appellants' Suppl. Br. 8 n.6. The Court, however, does not see how the informal proof of claim doctrine would affect the outcome of this Appeal. Whether formal or "informal," a proof of claim would still be necessary for claims allowance under § 502, and by extension, lien valuation under § 506(a). No party contends that Tri-County's claims would be "allowed" under this doctrine for purposes of lien avoidance, nor is there any evidence in the record to support "equitably" construing proofs of claim with respect to Tri-County's liens.

. . .

> (3) An unsecured claim which arises in favor of an entity or becomes allowable as a result of a judgment may be filed within 30 days after the judgment becomes final if the judgment is for the recovery of money or property from that entity or denies or avoids the entity's interest in property. If the judgment imposes a liability which is not satisfied, or a duty which is not performed within such period or such further time as the court may permit, the claim shall not be allowed.

Fed. R. Bankr. P. 3002(c). The Burkharts argue that Tri-County's liens fall within the exception for filing proofs of claim under Rule 3002(c)(3), which extends the applicable claims-filing deadline to thirty days after an avoidance judgment is final. Appellants' Suppl. Br. 9. As such, they suggest that no proof of claim *could have been filed* for Tri-County, since the Bankruptcy Court had not entered judgment declaring Tri-County's lien void. Am. Appellants' Br. 19-20. This, the Burkharts reason, means that a filed proof of claim cannot be a condition precedent to avoiding Tri-County's lien.

The Court disagrees. While the Burkharts are correct that Rule 3002(c)(3) is an exception to the ordinary timeline for filing proofs of claim, this exception applies only to "unsecured claims which arise[] in favor of an entity or become[] allowable *as a result of a judgment*." (emphasis added). But here, as noted by the Trustee, Tri-County's claims predated the avoidance action and arose from pre-existing contracts and equity security interests in real property, not by reason of a judgment. Tri-County's liens thus do not fit under Rule 3002(c)(3); they should have been filed by Tri-County, if at all, within 90 days of the meeting of creditors.

Again, Tri-County did not file a proof of claim under § 501, nor did the Trustee or the Burkharts.[16] And, as before, the junior liens at issue were not "allowed claims" in the Chapter 13

---

[16] The Burkharts suggest, albeit in a rather cursory fashion, that requiring a creditor's proof of claim to be filed prior to lien avoidance violates their due process rights. The Court rejects this proposition. The Bankruptcy Code does not deny the Burkharts access to the remedy they seek, i.e., lien avoidance for a completely undersecured junior homestead lien. The Code simply conditions entitlement to that remedy upon a condition precedent: an "allowed" claim. That condition was well within the Burkharts' control.

proceeding, *see* 11 U.S.C. § 502(a), such that the Bankruptcy Court could not properly value them for purposes of "stripping" them "off" under § 506(a). The text of §§ 502(a) and 506(a) provides additional support for the conclusion that filing a proof of claim is, in general, a prerequisite to lien avoidance in Chapter 13 proceedings.[17]

## V.

For the foregoing reasons, the decision of the Bankruptcy Court is **AFFIRMED**.

A separate Order will **ISSUE**.

_____/s/_____
**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

**July 26, 2016**

---

*See* 11 U.S.C. § 501(c); ("If a creditor does not timely file a proof of such creditor's claim, the debtor or the trustee may file a proof of such claim."); *see also* text accompanying note 11, *infra*.

[17] As noted by the Trustee, it appears that, absent an allowed (i.e., filed) claim, Tri-County will receive *no* distribution under the Burkharts' Chapter 13 plan. Under the Burkharts' reading of the applicable statutory provisions, Tri-County would not only be ineligible for distributions under the plan; it would also lose both its state law lien rights as well as its contractual right to repayment. Such an interpretation would not accord with the general principle that "liens pass through bankruptcy unaffected." *Dewsnup*, 502 U.S. at 417.